**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **WILFREDO VÁZQUEZ, et al.**<br>**Plaintiffs**<br><br>v.<br><br>**RAFAEL SURILLO-RUIZ, et al.**<br>**Defendants** | **Civil No. 13-1944 (DRD)** |

**OPINION AND ORDER**

Plaintiffs—all of whom are members of the New Progressive Party ("NPP")—claim to be victims of political discrimination instigated by the newly-elected Popular Democratic Party ("PDP") administration of the municipality of Yabucoa.  Plaintiffs are suing the mayor of Yabucoa, Rafael Surillo-Ruiz, in his official and individual capacities; the human resources director of Yabucoa, Damaris García-Ortega, in her official and individual capacities; the public works director of Yabucoa, Heriberto Vega-Solis, in his official and individual capacities; two other unnamed employees of the municipality of Yabucoa; and the municipality of Yabucoa itself.

Seven of the eight Plaintiffs ("Unemployed Plaintiffs") had fixed-term employment contracts, which have all since expired, that were not renewed by the newly-elected PDP administration.  The nonrenewal of these employment contracts is purportedly an act of political discrimination on the part of Defendants.  Ángel A. Rodriguez-Martinez, who is the eighth Plaintiff ("Employed Plaintiff"), is a regular/career employee that—while still working for the municipality of Yabucoa—is supposedly being subjected to political discrimination in the form of harassment.  Moreover, Employed Plaintiff avers that he is being deprived of his former employment duties by the newly-elected PDP administration.

Plaintiffs' claims for relief are summarized as follows: a) claims under 42 U.S.C. § 1983 for violations of Plaintiffs' First Amendment rights; b) claims under 31 P.R. Laws §§ 5141, and 5142 for violations of several of Plaintiffs' rights under the Commonwealth of Puerto Rico's constitution; and c) claims under 42 U.S.C. § 1988 and "other applicable statutes" for attorneys' fees, costs, and litigation expenses.

Pending before the Court are two motions to dismiss, see Docket Nos. 20, and 23, that propose several distinct grounds for dismissal depending on the precise cause of action alleged and the precise Defendant that is allegedly held responsible.  The intricacies of Defendants' individual arguments shall be expounded upon in the appropriate subsection in a systematic fashion.  To avoid unnecessary repetition, the germane facts will be reserved for the discussion of Defendants' fact-based requests for dismissal.  The Court shall begin by elucidating several nuances of the plausibility standard as the same is a common theme in many of Defendants' grounds for dismissal.

## I.    PLAUSIBILITY STANDARD

Rule 12(b), which contains seven subsections, is the primary source cited by Courts to dismiss a defective complaint.  *See* Fed. R. Civ. P. 12(b).  Once confronted with an allegation regarding the sufficiency of a complaint, the Court first turns to Federal Rule of Civil Procedure 8(a), which enumerates the minimum requirements of a valid complaint:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

A 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). The 12(b)(6) motion to dismiss will succeed when the pleadings of a complaint do not comply with Rule 8(a)(2). However, what does and does not comply with Rule 8(a)(2) has been the subject of debate for decades in the legal community.

The Supreme Court weighed in on this discussion in 1957 when called upon to evaluate the sufficiency of an allegedly deficient complaint:

> In appraising the sufficiency of the complaint [in this case] we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim **unless it appears <u>beyond doubt</u> that the plaintiff can prove <u>no set of facts</u> in support of his claim which would entitle him to relief**. (emphasis provided).
>
> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (overruled by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

This passage, embraced by our highest Court at the time, had been interpreted by many judges and commentators to mean that "a wholly conclusory statement of claim would survive a [12(b)(6)] motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Twombly</u>, 550 U.S. at 561 (2007) (describing the infirmity created by the controversial *Conley* passage). Such an interpretation harshly affects the desire of a defendant—who is genuinely not responsible for the claims in the complaint—to defend himself in a civil suit. "[T]he threat of discovery expense [would] push cost-conscious defendants to settle even anemic cases[.]" <u>Id.</u> at 559. Hence, many other judges and commentators, wary of these negative implications, declined to construe the Supreme Court's words in such a literal manner. The debate between these two schools of thought raged on for 50 years. Finally, the Supreme Court ended this controversy in 2007: "[A]fter puzzling the profession for 50

years, this famous observation has earned its retirement." Id. at 563 (followed by Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

The Supreme Court cleared the smoke and established that, in order to comply with Rule 8(a)(2), a complaint must state a "plausible" claim for relief, as opposed to merely stating a possible claim for relief.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, **the complaint has alleged—but it has not 'show[n]'—**that 'the pleader is entitled to relief.'"  (emphasis provided) Iqbal, 556 U.S. at 679 (using the language of Fed. Rule Civ. Proc. 8(a)(2) to explain plausibility).  In order to "nudge [a claim] across the line **from conceivable to plausible**," the complaint must contain enough facts to support a claim for relief.  See Twombly, 550 U.S. at 570 (emphasis provided).

"This plausibility standard has become the 'new normal' in federal civil practice." Garcia-Catalan v. United States, 734 F.3d 100, 101 (1st Cir. 2013) (citing A.G. v. Elsevier, Inc., 732 F.3d 77, 78–79 (1st Cir. 2013)).  In other words, while Conley (arguably) states that a complaint with a conclusory allegation need not have any supporting facts in order to comply with Rule 8(a)(2), both Iqbal and Twombly take the opposite point of view.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

The doors of discovery only open when a complaint has "factual allegations [that] are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Garcia-Catalan, 734 F.3d at 103 (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678)); see also Garcia-Catalan, 734

F.3d at 103 ("The circumstances in the complaint create a reasonable expectation that discovery may yield evidence of the government's allegedly tortious conduct"; citing Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011)).  The First Circuit further describes the relationship between plausibility and discovery in more detail:

> [T]he plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case.  *See* Twombly, 550 U.S. at 556 (requiring, as a hallmark of plausibility, that a complaint contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence").
>
> Garcia-Catalan, 734 F.3d at 104-05.

Notwithstanding, the First Circuit has been cautious when applying the plausibility analysis to certain types of cases.  Garcia-Catalan, 734 F.3d at 104 (citing Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012)).  "Generally speaking, these are cases in which a material part of the information needed [by the plaintiff] is likely to be within the defendant's control."  Garcia-Catalan, 734 F.3d at 104.  This caution is not in contravention with the Supreme Court's detailed plausibility standard:

> Because precise knowledge of the chain of events leading to the [claim] may often be unavailable to a plaintiff at this early stage of the litigation, we take to heart the Supreme Court's call to "draw on our 'judicial experience and common sense' as we make a contextual judgment about the sufficiency of the pleadings." *See* Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).
>
> Ocasio-Hernandez, 640 F.3d at 16

However, both the Supreme Court and the First Circuit have cautioned against equating a plausibility analysis with an analysis of a plaintiff's likely success on the merits. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678; *see also* Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely") (internal quotation marks omitted); Sepúlveda-

<u>Villarini v. Dep't of Educ. of P.R.</u>, 628 F.3d 25, 30 (1st Cir. 2010) (affirming that the plausibility standard assumes pleaded facts to be true and are to be read in plaintiff's favor)  (citing <u>Twombly</u>, 550 U.S. at 556); <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (citing <u>Iqbal</u>, 556 U.S. at 1950); *see also* <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (citing <u>Twombly</u>, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable'").  Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief."  <u>Sepúlveda-Villarini</u>, 628 F.3d at 29; *see also* <u>Iqbal</u>, 556 U.S. at 681 ("To be clear, we do not reject . . . bald allegations on the ground that they are unrealistic or nonsensical . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").  "To achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial."  <u>Medina-Velazquez v. Hernandez-Gregorat</u>, --- F.3d ----, 2014 WL 4628506, at *4 (1st Cir. 2014) (citing <u>Carrero–Ojeda v. Autoridad de Energía Eléctrica</u>, 755 F.3d 711, ——, 2014 WL 2786536, at *6 (1st Cir.2014)).

The First Circuit has mapped out the proper methodology to adequately analyze the plausibility of the claims present in a complaint:

> **Step one:** isolate and ignore statements in the complaint that **simply** offer legal labels and conclusions or **merely** rehash cause-of-action elements. <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (discussing, among other cases, <u>Iqbal</u>, 556 U.S. 662, and <u>Twombly</u>, 550 U.S. at 555.  (emphasis provided)
>
> <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012).

This is an exception to the general rule that, when evaluating the sufficiency of a complaint, "a court must accept as true all of the allegations contained in a complaint."

Iqbal, 556 U.S. at 678.   "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."   Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. at 680).   "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'"   Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto, 743 F.3d 278, 283 (2014) (citing Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (reiterated by Garcia-Catalan, 734 F.3d at 103)).   Notwithstanding, a second exception was carved out from Twombly by the First Circuit: "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual."   Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citing Twombly, 550 U.S. at 557 n.5 ("The border in [DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999)] was the line between the conclusory and the factual.   Here it lies between the factually neutral and the factually suggestive.   Each must be crossed to enter the realm of plausible liability.")).   The First Circuit, in a separate case, expounded upon these two exceptions:

> A conclusory allegation . . . is one which simply asserts a legal conclusion, such as "I was retaliated against," not a specific factual allegation, such as "my supervisor threw a book at me," that merely lacks some surrounding context. See Ocasio-Hernández, 640 F.3d at 13-14.  We have held that some factual allegations may be so "threadbare" that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied. See Peñalbert-Rosa, 631 F.3d at 595–96 (1st Cir. 2011). But this is only the case where the bareness of the factual allegations makes clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true. Id.
>
> Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto, 743 F.3d 278, 286 (1st Cir. 2014).

However, "the Supreme Court has suggested that allegations that would individually lack the heft to make a claim plausible may suffice to state a claim in the context of the complaint's other factual allegations." Ocasio–Hernandez, 640 F.3d at 15.

After duly describing *step one* in detail, the First Circuit continued their meticulous methodology of identifying a complaint's plausibility.

> **Step two:** take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. Ocasio-Hernandez, 640 F.3d at 12 (again, discussing *Iqbal* and *Twombly*, among others); *see also* S.E.C. v. Tambone, 597 F.3d 436, 441–42 (1st Cir. 2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a "context-specific" job that compels us "to draw on" our "judicial experience and common sense." Iqbal, 556 U.S. at 679. And in performing our review, we realize too that we can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005); *see also* Haley v. City of Boston, 657 F.3d 39, 44, 46 (1st Cir. 2011). (emphasis provided).
>
> Schatz, 669 F.3d at 55-56 (footnote omitted).

"Specific information, even if not in the form of admissible evidence, would likely be enough at [the pleading] stage; pure speculation is not." Penalbert-Rosa, 631 F.3d at 596. Nevertheless, "[n]othing about the plausibility standard requires a court to blind itself to what is obvious." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 48 (1st Cir. 2012).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal.* "Context-based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 556 U.S. at 671-72 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). However, the First

Circuit has also cautioned Courts that a plausibility analysis should not be done "too mechanically":

> We emphasize that the complaint must be read as a whole.  *See* Elsevier, 732 F.3d at 81–83.  As we have explained, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." Rodríguez–Reyes, 711 F.3d at 55. "For pleading purposes, circumstantial evidence often suffices to clarify a protean issue." Id. at 56 (internal quotation marks omitted).
>
> Garcia-Catalan, 734 F.3d at 103

Finally, at the expense of overstressing the obvious, "an adequate complaint must include not only a plausible claim but also a plausible defendant."  Penalbert-Rosa, 631 F.3d at 594.

Now that many of the intricacies and minutiae of the plausibility standard have been described, the Court may proceed to evaluate each of Defendants' grounds for dismissal. Defendants' arguments are set forth below along with the underlying facts of the complaint when applicable.  For the sake of precision, the following subsections are organized by each of Defendants' requests for dismissal.

## II.   ALLEGEDLY DEFECTIVE CLAIMS

In this subsection, the Court groups all of Defendants' attacks on Plaintiffs' claims for, allegedly, being defective.  For the sake of clarity, each of Plaintiffs' controverted claims is analyzed separately.

### A.  42 U.S.C. § 1983 Claims

The centerpiece of Plaintiffs' lawsuit is 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it

describes."  *See* <u>Baker v. McCollan</u>, 443 U.S. 137, 145, n. 3 (1979); <u>Albright v. Oliver</u>, 210

U.S. 266 (1994); <u>Lockhart-Bembery v. Sauro</u>, 498 F.3d 69, 74 (1st Cir. 2007); <u>Cruz-Erazo</u>

<u>v. Rivera-Montañez</u>, 212 F.3d 617 (1st Cir. 2000).  Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. For the purposes of this section, any
> Act of Congress applicable exclusively to the District of Columbia shall be
> considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Summarizing the statute, when assessing the imposition of liability under § 1983,

we must first ask "(1) whether the conduct complained of was committed by a person

acting under the color of state law; and (2) whether this conduct deprived a person of

rights, privileges, or immunities secured by the Constitution or laws of the United States."

<u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 558 (1st Cir. 1989) (citing <u>Parratt v.</u>

<u>Taylor</u>, 451 U.S. 527, 535 (1981)).  Acting under color of state law requires that "the

defendant in a § 1983 action have exercised power 'possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law.'"

<u>West v. Atkins</u>, 487 U.S. 42, 49 (1988) (citing <u>United States v. Classic</u>, 313 U.S. 299, 326

(1941)).  Despite not being one of the fifty states of the union, § 1983 applies to the

Commonwealth of Puerto Rico with equal force.  *See* <u>Deniz v. Municipality of Guaynabo</u>,

285 F.3d 142, 146 (1st Cir. 2002).

As far back as <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 690 (1978), the Supreme Court ruled that municipal entities are subject to § 1983 liability.  As such, sovereign immunity is unavailable to municipalities because they are not states.  *See* <u>Jinks v. Richland County</u>, 538 U.S. 456, 466 (2003).[1]  However, municipal liability cannot be based on the theory of *respondeat superior*.  <u>Monell</u>, 435 U.S. at 691.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Id.</u> at 694.

In the instant case, Plaintiffs invoke § 1983 claims grounded upon alleged violations of their First Amendment rights under the United States Constitution.[2]  Under § 1983, Plaintiffs demand both monetary damages and permanent-injunctive relief.  Different Defendants have presented different legal arguments to dismiss these § 1983 claims.  The Court shall evaluate each proposal for dismissal in the upcoming subsections; certain Defendants will be grouped together when appropriate.

### i.      Permanent Injunction Requests Under § 1983

---

[1] "'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." <u>Alden v. Maine</u>, 527 U.S. 706, 713 (1999) (reiterated in <u>Northern Ins. Co. of New York v. Chatham County, Ga.</u>, 547 U.S. 189, 193 (2006)).

[2] It should be noted that Plaintiffs aver—and Defendants do not contest—that political affiliation is not "an appropriate requirement for the effective performance of the public office involved." <u>Branti v. Finkel</u>, 445 U.S. 507, 518 (1980).  As such, the exception described in *Branti* is inapplicable to the analysis of the instant motions.

As all Defendants share the same arguments for dismissal of the § 1983 claims for a permanent injunction, the Court finds it convenient to begin the discussion here.[3] Plaintiffs demand that Defendants be ordered to reinstate Plaintiffs to their prior employment positions with all of their corresponding benefits and privileges, and to refrain from any further adverse employment actions based on political affiliation.  In response, Defendants allege that these claims should be dismissed as the same are not alleged correctly and/or Plaintiffs are not entitled to such relief.  For the reasons set forth below, the Court disagrees with Defendants' premise and denies their request without prejudice. Notwithstanding, the Court makes it clear that this order is not to be construed to mean that a permanent injunction has, will, or should be issued.

There are three basic types of injunctions in federal law: a temporary restraining order, a preliminary injunction, and a permanent injunction.  *See* 11A C. Wright & A. Miller, Federal Practice and Procedure § 2941, p. 33 (3d ed. 2013); *see also* Fed. R. Civ. P. 65. The distinctions between the three are matters for another day, however, as Plaintiffs' requests are limited to the most severe of the three.

Four factors must be satisfied before a Court may unleash the full force of a permanent injunction:

> "(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction."
>
> Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla, 490 F.3d 1, 8 (1st Cir. 2007).

---

[3] Prospective injunctive relief as an equitable remedy against defendants in their official capacity is not barred by the doctrine of sovereign immunity, pursuant to Ex Parte Young, 209 U.S. 123 (1908), to end a "continuing violation of federal law."  Mills v. State of Me., 118 F.3d 37, 54 (1st Cir. 1997) (citing Green v. Mansour, 474 U.S. 64, 68 (1985)).  In *Mills*, the First Circuit stressed that "the doctrine of *Ex parte Young* . . . allows plaintiffs to avoid the [doctrine of sovereign immunity] by naming a state officer in his official capacity in cases where prospective declaratory and injunctive relief is sought."  Id. at 53.

The Court need look no further than the first of the four requirements to find that adjudicating the propriety of such a remedy is impossible at such an early stage of the lawsuit.  At the pleading stage, it is impossible for Plaintiffs to have *prevailed on the merits* because the instant case is only just beginning.  This fact requires a denial of Defendants' entreaty to dismiss these claims at this stage.

ii.    **Individual Capacity Defendants**

The mayor of Yabucoa ("Defendant Surillo-Ruiz"), the human resources director of Yabucoa ("Defendant García-Ortega"), and the public works director of Yabucoa ("Defendant Vega-Solis") aver that the § 1983 claims for monetary damages should be dismissed as to their individual capacities because those claims are not *plausible*.  Issuing a ruling on such a request requires that the Court clearly delineate what is and what is not required of the First Amendment claims alleged in the instant case.

As previously alluded to, the main focus of a § 1983 claim is twofold: "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)).  As such, the plausibility of these two requisites must be assessed.  Should the Court deem either of the two requirements implausible under the *Twombly-Iqbal* standard, the amended complaint is ripe for dismissal.  Turning to the first requirement, it is quite clear that Defendants, who are all employees of the municipality of Yabucoa, plausibly acted under color of state law.  However, the second

prong merits closer examination.  With respect to these types of political-discrimination claims, the second prong is grounded upon four *prima facie* elements that must be established by Plaintiffs before prevailing: 1) "that the protagonists are members of opposing political parties"; 2) "that the defendant knows of the plaintiff's political affiliation"; 3) "that an adverse employment action occurred"; and 4) "that political affiliation was a substantial or motivating factor behind the adverse action."  Rodriguez-Reyes, 711 F.3d at 55 (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012)).  Therefore, the plausibility of the second §1983 requirement turns on whether the four *prima facie* requirements are deemed plausible.

Individual-capacity Defendants' motion to dismiss is focused on Plaintiffs' noncompliance with two of the four political-discrimination factors.  Moreover, Defendants claim that Plaintiffs have not demonstrated how each individual-capacity Defendant is plausibly connected to the illicit conduct alleged.  However, as described by Plaintiffs in their response, it is not necessary for Plaintiffs—at this stage of the lawsuit—to establish the elements of a *prima facie* case.  "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Rodríguez–Reyes, 711 F.3d at 54 (reiterated in Medina-Velazquez, --- F.3d ----, 2014 WL 4628506, at *4 (1st Cir. 2014)).  The First Circuit carefully described the interplay between the elements of a *prima facie* case and the plausibility standard:

> [W]e do not mean to imply that the elements of the prima facie case are irrelevant to a plausibility determination in a discrimination suit. They are not. Those elements are part of the background against which a plausibility determination should be made.
> . . .
>     In a nutshell, the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim. Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard—she need not plead facts sufficient to establish a prima facie case.

Rodriguez-Reyes, 711 F.3d at 54.

Provided with the legal foundation erected by the First Circuit, this Court must now examine the craftsmanship of these political-discrimination claims in order to ascertain their compliance with the specifications of *Iqbal*, *Twombly*, and their First Circuit progeny. To begin, for the sake of the instant motion to dismiss, individual-capacity Defendants do not challenge the first *prima facie* element—that Plaintiffs and Defendants are members of opposing political parties—or the third *prima facie* element—that an adverse employment action occurred.  Therefore, the Court focuses its analysis on the other two *prima facie* requisites: that these Defendants knew of Plaintiffs' political affiliation, and that political affiliation was a substantial or motivating factor behind the adverse employment action.

Gleaning the amended complaint using the lens of plausibility, the Court has encountered several indicators that Plaintiffs have plausibly pleaded both contested *prima facie* factors.  The Court shall combine the analysis of the two controverted *prima facie* requirements as several of the upcoming citations may reasonably be construed to apply to both.

The complaint alleges that the NPP was the governing political party of the municipality of Yabucoa for the twelve years (three four-year terms) prior to the PDP party coming into power in January of 2013.  *See* Docket No. 14, ¶ 30.  Therefore, it is plausible that Defendants probably knew that most, if not all, of the employees working for the prior administration were NPP employees.  Moreover, Plaintiffs allege that they "were active and open in their campaigning for NPP candidates during the 2012 election[.]"  Id. at ¶ 28.  It should be emphasized that Plaintiffs were specifically campaigning for Ángel García-De

Jesús, Defendant Surillo-Ruiz's main competitor in the mayoral election.  Id. at ¶ 28.
Plaintiffs also alleged that they participated in political activities and events.  Id. at ¶ 35.
Further, in light of the foregoing, it is plausible that Defendants knew that Plaintiffs did not
vote for Defendant Surillo-Ruiz.  See Id. at ¶ 29.   Additionally, Defendants allegedly
substituted NPP Plaintiffs with PDP workers.  Id. at ¶ 46.  Plaintiffs further alleged that they
informed Defendants that they were available to continue working for the municipality of
Yabucoa, but were never called back or rehired.  Id. at ¶ 48.  Also, Plaintiffs alleged that
they had never received a negative evaluation of their work for the municipality of
Yabucoa.  Id. at ¶ 42.  However, the most critical allegation presented is that Defendants
plausibly lied about the fact that the municipality of Yabucoa was not hiring.  Id. at ¶¶ 47,
and 53 (noting the word "Defendants").   This allegation of untruthfulness has some
plausible bite to go with its bark when combined with Plaintiffs' assertion that they noticed
that there were new never-before-seen employees in the workplace.  Id.  Further, the
allegation that some employees (who are not parties in the instant case) did have their
employment contracts renewed—because they voted for Defendant Surillo-Ruiz and/or
had family members or close friends who supported Defendant Surillo-Ruiz—strongly
suggests that political discrimination has transpired.  Id. at ¶ 54.

Nevertheless, the analysis should not end at this juncture.   "[A]n adequate
complaint must include not only a plausible claim but also a plausible defendant."
Peñalbert–Rosa, 631 F.3d at 594.  Does the complaint plausibly connect these Defendants
to the alleged First Amendment violations?  In order to answer this question, it is useful to

separate this discussion into two phases: the § 1983 claims of Unemployed Plaintiffs, and the § 1983 claims of Employed Plaintiff.[4]

The Court is satisfied that the seven Unemployed Plaintiffs' political discrimination claims against all three individual-capacity Defendants are plausible. This determination is primarily based on a plausible inference grounded upon Defendants' aforementioned lie. According to the amended complaint, as previously alluded to, Defendants informed Unemployed Plaintiffs that the municipality of Yabucoa was not hiring despite the fact that there purportedly were new employees performing Plaintiffs' former occupations. Id. at ¶¶ 47, and 53 (noting the word "Defendants"). It is plausible that these Defendants, who allegedly have certain control over the municipality of Yabucoa's employment choices, would be in a position to know that there were new employees contracted. Thus, it is plausible that these Defendants blatantly lied. If the decision to not renew the employment contracts was based on legitimate legal reasons, why would these Defendants lie about it? One plausible conclusion is that these Defendants were attempting to cover up a politically-motivated reason for not renewing Unemployed Plaintiffs' employment contracts. With that in mind, at least for the moment, Unemployed Plaintiffs' § 1983 claims against all individual-capacity Defendants are allowed to stand.

Moreover, with respect to Employed Plaintiff, the allegation that all Defendants would "constantly humiliate [Employed Plaintiff] in front of the employees he is supposed to supervise by telling him that he is being watched and threatening him with being dismissed" by itself is more than adequate to plausibly connect these Defendants to his §

---

[4] For ease of read, the Court emphasizes, as it did at the beginning of this opinion, that Unemployed Plaintiffs are the seven plaintiffs that did not have their employment contracts renewed once the PDP administration took power of the municipality. Similarly, Employed Plaintiff, who is the only other plaintiff, is the plaintiff that continues to work for the municipality.

1983 claim.  Id. at ¶ 192; *see also* Id. at p. 9, n. 1.  Furthermore, the allegations regarding Defendant García-Ortega and Defendant Vega-Solis are especially damning.  Defendant Vega-Solis would allegedly convey to Employed Plaintiff that he would make sure that Employed Plaintiff was fired now that the PDP was in power.  Id. at ¶ 61.  Defendant García-Ortega, the human resources director, allegedly ignored Employed Plaintiff's plea for her to intervene and stop the harassment.  Id. at ¶ 62.  These allegations, without more, are enough to satisfy the plaintiff-friendly plausibility standard.

Notwithstanding, the Court reminds the parties that it is not the Court's function to assess the viability of these allegations at this stage of the litigation and must take all well-pleaded facts as true for the purposes of these motions to dismiss.  *See generally* Twombly, 550 U.S. 544; *and* Iqbal, 556 U.S. 662.[5]  Thus, at least for the moment, Plaintiffs' § 1983 claims against these individual-capacity Defendants remain in force.  The time to evaluate the next Defendant's argument for dismissal has arrived.

### iii.  Municipality of Yabucoa

The municipality of Yabucoa ("Municipality") bases its argument for dismissal of the monetary claims under § 1983 on an assumption that is grounded upon a reading of paragraph fifty-four (54) of the amended complaint.  In essence, the reasoning is based on the contention that Plaintiffs have failed to plausibly connect the Municipality to the

---

[5] At the summary judgment stage—either by direct or circumstantial evidence—Defendants' actual lack of knowledge of Plaintiffs' political affiliations and/or nondiscriminatory reasons for the adverse employment actions may be flushed out.

constitutional violations alleged.  For the sake of clarity, the aforementioned paragraph is set forth below:

> 54. At the same time, there were some individuals who worked with [Unemployed Employees] during the [previous NPP] administration whose appointments were renewed and/or [sic] that were recalled or rehired, but those individuals had expressed to [Unemployed Employees] that they had voted and supported [the newly-elected PDP mayor] and/or had family members or close friends who supported [the newly-elected PDP mayor] help them get rehired/recalled/renewed.
>
> Docket No. 14, p. 14, ¶ 54.

Essentially, the Municipality contends that this specific allegation undermines Plaintiffs' § 1983 claims as it demonstrates that the Municipality had no discriminatory practice of not renewing employment contracts on the basis political affiliation.  *See* Monell, 435 U.S. at 694 (describing the requirements needed for municipal liability under § 1983).  The Municipality seems to reasonably imply that the employees that had their employment contracts renewed, as described in paragraph fifty-four, must have been NPP members.  However, at this time, this is only an assumption as said paragraph makes no such claim.  Further, the Court must evaluate a complaint in the light most favorable to Plaintiffs when assessing a motion to dismiss.  Hence, the Court refuses to read a hypothetical party affiliation into the aforementioned paragraph of the complaint at this time.  Additionally, even if these employees were affiliated to the NPP, it is still plausible, on the face of the complaint, that the Municipality is liable under § 1983 due to the purported discriminatory practice of favoring NPP employees that supported, or have relatives or close friends who supported, the PDP.  The Municipality's argument is futile.

Further, stretching the Municipality's argument to also invoke a dismissal on plausibility grounds, the § 1983 claims against the Municipality are deemed adequate. First, the actions of a Municipality unmistakably fall within the ambit of acts under color of

state law.  Second, relying upon the reasons discussed in the previous subsection, the four

*prima facie* elements of the political discrimination claims are ruled plausible.  All that

remains is for the Court to determine whether the Municipality is a plausible Defendant in

the instant case.  To that extent, using the language of the Supreme Court, this Court finds

it plausible that the mayor's "edicts or acts may fairly be said to represent official policy" of

the municipality of Yabucoa.  <u>Monell</u>, 435 U.S. at 694.  As such, the Municipality is

plausibly connected to the conduct averred by Plaintiffs.  Hence, the Municipality's grounds

for dismissal are denied as the claims and the Defendant's participation are deemed

plausible.  The Court now proceeds to evaluate the arguments of the third and final group

of Defendants.


### iv.    Official Capacity Defendants

The mayor of Yabucoa, the human resources director of Yabucoa, and the public

works director of Yabucoa each aver that the monetary claims under § 1983 should be

dismissed as to their official capacities on the grounds of redundancy.  The reasoning is

that the claims are duplicitous because "[a]s long as the government entity receives notice

and an opportunity to respond, an official-capacity suit is, in all respects other than name,

to be treated as a suit against the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)

(citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985)).   In the instant case, as the

Municipality is a Defendant in the instant lawsuit, it has been duly notified of the claims and

has been given an opportunity to respond.   Moreover, the Municipality has in fact

responded.

Accordingly, Plaintiffs have conceded to having these monetary claims under § 1983 dismissed against official-capacity Defendants to the extent that the claims are in fact duplicitous.  *See* Docket No. 30, p. 17.  Hence, following the lead of various other district courts, this Court hereby dismisses the official-capacity § 1983 claims for monetary relief.  *See e.g.* Cotton v. District of Columbia, 421 F.Supp.2d 83, 86 (D.D.C. 2006); Baines v. Masiello, 288 F.Supp.2d 376, 384 (W.D.N.Y. 2003); *and* McCachren v. Blacklick Valley School Dist., 217 F.Supp.2d 594, 599 (W.D.Pa. 2002).  However, the § 1983 permanent-injunction claims are not dismissed with respect to the official-capacity Defendants because: (a) Plaintiffs have not conceded this dismissal, and (b) official-capacity Defendants have not made a showing that these injunctive-relief claims are redundant or duplicitous.

Hence, despite the dismissal of the monetary claims under § 1983, all three official-capacity Defendants must remain as parties to the instant lawsuit.  *See* Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996) ("[S]ince our decision in Ex parte Young, 209 U.S. 123 (1908), we often have found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'") (quoting Green, 474 U.S. at 68); *See also* Mills, 118 F.3d 37.  Finally, the Court may now move on to the allegedly defective claims under Puerto Rico law.

### B.  31 P.R. Laws §§ 5141, and 5142 Claims

Having culminated the assessment of Defendants' petitions to dismiss the § 1983 claims, the Court shall commence the scrutiny of Defendants' arguments to dismiss the constitutional state-law claims.  Plaintiffs contend that Defendants violated five sections of

Puerto Rico's own Bill of Rights.[6]  The vehicles used by Plaintiffs to seek a remedy are Puerto Rico's general tort statutes: 31 P.R. Laws §§ 5141, and 5142.  Defendants move to dismiss these claims on a mishandled technicality.  Defendants contend that Plaintiffs may not use the aforementioned general tort statutes because a more specific tort statute—29 P.R. Laws § 146 (commonly referred to as "Law 100")—exists, which was not alleged in the amended complaint.

However, even when taking this premise as true, Law 100 does not apply to the instant fact pattern because the same is generally available only against private-entity—as opposed to public-entity—businesses.  *See generally* <u>Rivera Briceno v. Juan Rodriguez</u>, 129 D.P.R. 669, 675-77 (1991).  The only exception is when the public-entity business operates as a private-entity business.  *See* 29 P.R. Laws § 146.  There is no doubt that the

---

[6] P.R. Const. Art. II

§ 1
The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

§ 2
The laws shall guarantee the expression of the will of the people by means of equal, direct and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise.
. . .

§ 4
No law shall be made abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances.
. . .

§ 6
Persons may join with each other and organize freely for any lawful purpose, except in military or quasi-military organizations.

§ 7
The right to life, liberty and the enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied the equal protection of the laws. No laws impairing the obligation of contracts shall be enacted. A minimum amount of property and possessions shall be exempt from attachment as provided by law.

Municipality is a public entity.  *See* <u>Rodriguez Cruz v. Padilla Ayala</u>, 125 D.P.R. 486, 511 (1990).  Moreover, Defendants have never made any sort of proffer that the instant Municipality, despite being a public entity, operates as a private entity.  This is a wise decision as the Puerto Rico Supreme Court has previously repudiated such an argument. <u>Id.</u>  Therefore, Defendants' motions to dismiss on these grounds are hereby denied.  The state-constitution claims have survived Defendants' motions to dismiss.  The Court may now turn to the evaluation of the defenses presented by Defendants.


## III.    THE DEFENSES INVOKED

Having discussed the multitude of Defendants' defective-pleading arguments, the Court switches gears and trains its focus on two defenses invoked by Defendants.  The individual-capacity Defendants demand that the Court dismiss the claims against them because they are shielded from responsibility by qualified immunity.  The second shield, which is presented by all Defendants, is the *Mt. Healthy defense*.  These defenses are evaluated separately with the corresponding analysis elucidated below.


### A. Qualified Immunity

Individual-capacity Defendants now request permission from the Court to don the protective armor of qualified immunity.   Qualified immunity includes two types of immunities: (1) immunity from liability, and (2) immunity from suit.  *See* <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).   The scope of the second type of immunity implies that questions of qualified immunity are to be resolved at the earliest possible juncture in the

litigation.  *See* Hunter v. Bryant, 502 U.S. 224, 227 (1991) (reiterated in Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  The burden of pleading a defense of qualified immunity lies with a defendant.  *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980).  Moreover, the qualified-immunity defense is inapplicable to injunctive-relief claims. Behrens v. Pelletier, 516 U.S. 299, 312 (1996).  Hence, at the pleading stage of a § 1983 litigation, courts are often confronted with Defendants seeking refuge under the qualified-immunity defense.  The First Circuit has the analysis of this issue down to a science:

> The two-step procedure for assessing a plea of qualified immunity at the motion to dismiss stage is well-rehearsed. *See, e.g.,* Feliciano–Hernández v. Pereira–Castillo, 663 F.3d 527, 532–33 (1st Cir.2011); Eldredge, 662 F.3d at 104–05. On the basis of the pleadings, we must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 269 (quoting Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).
>
> Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013).

A defendant is entitled to qualified immunity unless both prongs are satisfied.  *See* Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011).  At the pleading stage, as this case demonstrates, scrutiny of a qualified-immunity defense has a tendency to overlap with a plausibility analysis.

Turning to the first qualified-immunity prong, the inquiry is whether the facts alleged by Plaintiffs in the amended complaint plausibly describe violations of Plaintiffs' constitutional rights.  As previously stated, to succeed on a First Amendment political discrimination claim, Plaintiffs must prove: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a

substantial or motivating factor for the adverse employment action." <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F.3d 228, 239 (1st Cir. 2010).   Evaluating the four-factor test outlined by the First Circuit through the lens of plausibility, the Court determines that Plaintiffs have set forth sufficient factual allegations to comply with the first prong of qualified immunity.   In making this finding, the Court incorporates and adopts its own fact-specific plausibility analysis contained in a prior subsection of this opinion.[7]   Next, the Court shall discuss the second requirement of qualified immunity: that individual-capacity Defendants' alleged conduct violated a "clearly established" constitutional right.

Under the First Amendment, government officials are prohibited from taking an adverse employment action against a public employee because of the employee's political affiliation, unless political loyalty is a legitimate requirement for the position in question. *See* <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 75-76 (1990); <u>Branti v. Finkel</u>, 445 U.S. 507, 516-518 (1980); *and* <u>Elrod v. Burns</u>, 427 U.S. 347, 372-73 (1976) (plurality opinion). Subject to the latter exception, government officials cannot discharge public employees simply because of their political affiliations.   *See* <u>Elrod</u>, 427 U.S. at 350.   Additionally, **"**[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.**"** <u>Rutan</u>, 497 U.S. at 75 (rejecting the view that "[o]nly those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment.").   The First Amendment serves to protect the freedom of government employees to associate with a political party, limiting the government's rights to interfere with said beliefs, except in the most compelling circumstances.   <u>Id.</u> at 76.

---

[7] *See* Part II of the instant opinion and order.

Once more, the Court must segregate Plaintiffs into two distinct groups as one Plaintiff is situated differently than the other seven.   Hence, the analysis will differ depending on which claim is being evaluated.   The seven Unemployed Plaintiffs, those whose contracts were not renewed, have § 1983 claims based on Defendants' failure to renew their employment contracts because of their political affiliations.   Do Unemployed Plaintiffs possess a "clearly established" First Amendment right to be protected from this purported conduct?  The Court rules in the affirmative.

In light of several Supreme Court opinions, this Court finds that Unemployed Plaintiffs possess a right to not have their political affiliations be the reason why their employment contracts have not been renewed.   *See e.g.* Perry v. Sindermann, 408 U.S. 593, 597-98 (1972) (standing for the proposition that nonrenewal of a college professor's employment contract may not be based on the employee's exercise of his or her First and Fourteenth Amendment rights).   While Unemployed Plaintiffs were not college professors, they—as in *Perry*—did not have their employment contracts renewed, and the nonrenewal was allegedly based on conduct protected by the First Amendment.   The Court considers its ruling to be in line with another subsequent Supreme Court case:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see* Mitchell, *supra*, 472 U.S., at 535, n. 12, 105 S.Ct., at 2820, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *See, e.g.*, [Malley v. Briggs, 475 U.S. 335, 344-45 (1986)]; Mitchell, *supra*, 472 U.S., at 528, 105 S.Ct., at 2816; Davis, *supra*, 468 U.S., at 191, 195, 104 S.Ct., at 3017, 3019.
>
> Anderson v. Creighton, 483 U.S. 635, 640 (1987)

Consequently, the Court finds that the ruling in *Perry* "clearly establishes" that the purported conduct violates Unemployed Plaintiffs' First Amendment rights.  The First Circuit has also weighed in on the views of the Supreme Court: "The Supreme Court's opinion . . . held that despite a government employer's general authority to terminate, or not-renew, an at-will government contract, the First Amendment is violated if the employer would not have taken that action but for the contractor's exercise of his protected free speech rights."  Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 527 (1st Cir. 2009) (citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996)); *See also* Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125, 127-28 (1st Cir. 1987).

The Court may now shift gears and evaluate the "clearly established" nature of the remaining Plaintiff's First Amendment claim.  Employed Plaintiff, who is a career employee that still works for the municipality, is purportedly experiencing damages as a result of politically-motivated harassment.  There is no doubt that it is "clearly established" that the politically-motivated harassment experienced by Employed Plaintiff, if true, violates his First Amendment rights.  *See e.g.* Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 42 (1st Cir. 2007) ("Actions of informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims if the motive was political discrimination . . .").  Moreover, the Court emphasizes that each individual-capacity Defendant was already plausibly found to have a hand in the plausible § 1983 violations.[8]  Thus, the Court rules that individual-capacity Defendants are unable to wear the armor of qualified immunity at this early juncture.

---

[8] *See* Part II of the instant opinion and order.

### B. *Mt. Healthy* Defense

All Defendants join in an attempt to seek refuge under what has come to be called the *Mt. Healthy* defense. Once Plaintiffs have established a *prima facie* case of political discrimination, "Defendants then must demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977)).

> A defendant seeking the protection of the *Mt. Healthy* defense bears the burden of persuasion "to prove by a preponderance of the evidence that the adverse employment action would have been taken 'even in the absence of the protected conduct.'" Guilloty Perez v. Pierluisi, 339 F.3d 43, 56 (1st Cir. 2003) (quoting Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568).
>
> Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 767 (1st Cir. 2010).

At the pleading stage, not surprisingly, the Court has not been placed in a position to resolve such an issue. As previously alluded to, Plaintiffs are not required to establish a *prima facie* case in order to plead a plausible political-discrimination claim. Notwithstanding, even assuming that a *prima facie* case has been made, the Court lacks the evidence to make a sound ruling that Defendants have satisfied the requisites of the *Mt. Healthy* defense. Therefore, just as Plaintiffs have not established a *prima facie* case, Defendants have not established a *Mt. Healthy* defense. The difference is that Plaintiffs are not required to carry this evidentiary burden at the pleading stage while Defendants, if they are to prevail on these grounds, are required to carry their own evidentiary burden. Defendants have not provided the Court with the evidentiary tools to prevail at this time. Hence, a denial without prejudice of the *Mt. Healthy* defense must be entered.

## IV.    MISCELLANEOUS MATTERS

There are two other feathers in Defendants' hat that take aim at Plaintiffs' amended complaint.  Each may be dealt with briefly.  First, Defendants contend that Plaintiffs have not conjured a plausible claim of conspiracy under § 1983.  Accordingly, Defendants propose a dismissal of these claims.  Plaintiffs respond, and the Court agrees, that the amended complaint does not invoke any substantive conspiracy claims.  Therefore, this request is deemed moot.  Second, Defendants asseverate that Plaintiffs' request for punitive damages is unavailable against municipalities; hence, the claims for punitive damages against the municipality of Yabucoa should be dismissed.  As Plaintiffs have conceded this point, a thorough discussion of this issue is unwarranted.  The Court only notes that Defendants' proffer is accurate.  *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  The request is granted.

## V.    CONCLUSION

For the reasons previously expounded upon, the Court hereby **GRANTS** in part, **DENIES** in part, and finds **MOOT** in part Defendants' motions to dismiss.  The rulings enclosed in the instant opinion and order may be summarized as follows: the petition to dismiss the monetary claims under § 1983 against Defendants Surillo-Ruiz, García-Ortega, and Vega-Solis in their official capacities is granted; the petition to dismiss the punitive-damages claims against the municipality of Yabucoa is granted; the petition to dismiss the conspiracy claims is deemed moot; and all other petitions contained in these

motions are denied.[9]   All Defendants are hereby ordered to answer the amended complaint within ten working days from the entry of this opinion and order.[10]


   **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of January, 2015.


                                        /s/ DANIEL R. DOMINGUEZ
                                        DANIEL R. DOMINGUEZ
                                        U.S. District Judge

---

[9] For the sake of clarity, the Court emphasizes that the permanent injunction claims under § 1983, neither of which are monetary, have not been dismissed.

[10] The Court notes that there are still pending claims, which have not been dismissed, against each named Defendant.